Rebecca K. Smith
P.O. Box 7584
Missoula, Montana 59807
Ph: (406) 531-8133
Fax: (406) 830-3085
Email: publicdefense@gmail.com

James Jay Tutchton
Tutchton Law Office, LLC
6439 E. Maplewood Ave.
Centennial, CO 80111
Ph: (720) 301-3843
Email: jtutchtontlo@gmail.com
(*Pending approval of pro hac vice motion*)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR DISTRICT OF MONTANA
# MISSOULA DIVISION

| | | |
|---|---|---|
| ALLIANCE FOR THE WILD ROCKIES, FRIENDS OF THE CLEARWATER, and WILDEARTH GUARDIANS, | ) ) ) ) | Case No. _____ |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| KEN SALAZAR, in his official capacity as United States Secretary of the Interior, ROWAN GOULD, in his official capacity as Acting Director of the United States Fish and Wildlife Service, and UNITED STATES FISH AND WILDLIFE SERVICE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## INTRODUCTION

1.      Through this suit, Plaintiffs challenge the Federal Defendants'
action re-instituting the rule removing gray wolves in all areas of the
Northern Rocky Mountains Distinct Population Segment ("DPS") outside of
Wyoming from the list of species protected under the Endangered Species
Act ("ESA").  See 74 Fed. Reg. 15123 (April 2, 2009) (delisting rule).  This
Court previously struck down this delisting rule because the Court
concluded that delisting less than an entire DPS exceeded Defendants'
statutory authority under the ESA.  See Defenders of Wildlife, et al. v.
Salazar, et al., 729 F.Supp.2d 1207 (D. Mont. 2010).  Subsequently, while
this Court's decision striking down the delisting rule remains pending on
appeal, Congress passed and the President signed H.R. 1473, the Department
of Defense and Full Year Continuing Appropriations Act of 2011.  Section
1713 of this Act directed the Federal Defendants to take the challenged
action re-instituting the delisting rule previously struck down by this Court.
P.L. 112-10 § 1713, 125 Stat. 38 (April 15, 2011) (hereinafter the "Budget
Rider").  The Budget Rider did not amend the ESA in any manner and is
simply a legislative and executive effort to reverse this Court's holding in
Defenders of Wildlife, 729 F.Supp.2d 1207.  As a legislative enactment
designed to affect the outcome of a particular pending case, without

amending the underlying statute involved, the Budget Rider violates the

Separation of Powers Doctrine contained in the U.S. Constitution and is

therefore unconstitutional.  See U.S. v. Klein, 80 U.S. 128 (1871).

Accordingly, Plaintiffs seek a declaratory judgment that the Budget Rider is

unconstitutional and injunctive relief prohibiting its implementation.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiffs' claim pursuant to 28

U.S.C. § 1331 (federal question) and may issue a declaratory judgment and

injunctive relief pursuant to 28 U.S.C. §§ 2201-02.

3.     Venue is proper in this District under 28 U.S.C. § 1391 because

lead Plaintiff Alliance for the Wild Rockies resides in the District of

Montana; land affected by the challenged action is within the District of

Montana; and a substantial part of the events giving rise to Plaintiffs' claim

occurred in this District.  Venue is proper in the Missoula Division because

every county within the Missoula Division is also within the Northern

Rocky Mountain gray wolf DPS and is affected by the challenged action.  In

addition, the case which the Budget Rider attempts to reverse, Defenders of

Wildlife, 729 F.Supp.2d 1207 arose in the Missoula Division.

## PARTIES

4.      Plaintiff ALLIANCE FOR THE WILD ROCKIES ("AWR") is

a tax-exempt, non-profit, public-interest organization dedicated to the

protection and preservation of the native biodiversity or the Northern

Rockies Bioregion, its native plants, fish and animal life, and its naturally

functioning ecosystems.  AWR has over 2,000 individual members and more

than 500 member businesses and organizations.  AWR is a plaintiff in

Defenders of Wildlife, et al. v. Salazar, et al., 729 F.Supp.2d 1207 (D. Mont.

2010).

5.      Plaintiff FRIENDS OF THE CLEARWATER ("FOC"), a

recognized non-profit organization since 1987, defends the Idaho Clearwater

Bioregion's wildlands and biodiversity through a Forest Watch program,

litigation, grassroots public involvement, outreach and education.  The Wild

Clearwater Country, the northern half of central Idaho's Big Wild, contains

many unprotected roadless areas and wild rivers, and provides crucial habitat

for countless rare plant and animal species.  FOC strives to protect these

areas, restore degraded habitats preserve viable populations of native

species, recognize national and international wildlife corridors, and to

protect public lands.  FOC is a plaintiff in Defenders of Wildlife, et al. v.

Salazar, et al., 729 F.Supp.2d 1207 (D. Mont. 2010).

6.     Plaintiff WILDEARTH GUARDIANS ("Guardians") is a relatively new conservation organization created on January 28, 2008 from the merger of three older organizations: Forest Guardians, Sinapu (the Ute word for wolf), and the Sagebrush Sea Campaign.  Guardians continues the work of these three predecessor organizations.   Guardians' mission is to protect and restore wildlife, wild rivers, and wildlands throughout the American West.  Headquartered in Santa Fe, New Mexico, Guardians also maintains offices in Denver, Colorado and Phoenix, Arizona.  The organization has approximately 4,500 members who live throughout the country, including within the range of the wolf in the Northern Rocky Mountains.

7.     All Plaintiffs file suit on behalf of themselves and their adversely affected members.  All Plaintiffs have long-standing interests in the preservation and recovery of gray wolves in the northern Rockies, because Plaintiffs and their members place a high value on preserving wolves and their critical role in the functioning of healthy ecosystems. Plaintiffs seek to protect and recover the gray wolf through a wide array of actions including public education, scientific analysis, and legal advocacy promoting healthy ecosystems in the region.

8.      Members of each of the Plaintiff conservation groups use public land in the northern Rocky Mountains for recreational pursuits, including hiking, camping, backpacking, hunting, fishing, skiing, wildlife viewing, and aesthetic enjoyment.  Members of the Plaintiff groups seek to view wolves and signs of wolf presence in the wild throughout the northern Rockies, and Defendants' challenged action will reduce their opportunity to do so.  The removal of Endangered Species Act protection for gray wolves in most of the northern Rockies will also cause irreparable ecological harm to the ecosystems where wolves are now found.  The legal violation alleged in this Complaint causes direct injury to the aesthetic, conservation, recreational, scientific, educational and wildlife preservation interests of Plaintiff organizations and their members.

9.      Plaintiffs' aesthetic, conservation, recreational, scientific, educational and wildlife preservation interests have been, are being, and, unless their requested relief is granted, will continue to be adversely and irreparably injured by the Federal Defendants' unconstitutional conduct. Additionally, Plaintiffs AWR and FOC have been, are being, and unless their requested relief is granted, will continue to be adversely and irreparably injured by the deprivation of the successful judicial relief they obtained from this Court in Defenders of Wildlife, _et al._ v. Salazar, _et al._, 729 F.Supp.2d

6

1207 (D. Mont. 2010).  These are actual, concrete injuries traceable to Defendants' conduct that would be redressed by the requested relief. Plaintiffs have no adequate remedy at law.

10.     Defendant KEN SALAZAR is the U.S. Secretary of the Interior.  In that capacity, Secretary Salazar has supervisory authority over the U.S. Fish and Wildlife Service.  Defendant Salazar is sued in his official capacity.

11.     Defendant ROWAN GOULD is the Acting Director of the U.S. Fish and Wildlife Service.  Defendant Gould is sued in his official capacity.

12.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE ("FWS" or the "Service") is a federal agency within the U.S. Department of the Interior.  FWS is responsible for administering the ESA with respect to terrestrial wildlife such as gray wolves.

13.     Defendants Salazar, Gould, and FWS (collectively the "Federal Defendants") are responsible for implementing the unconstitutional Budget Rider challenged in this suit.

**THE SEPARATION OF POWERS DOCTRINE**

14.     The Separation of Powers Doctrine, setting apart the executive, legislative, and judicial functions of government is one of the basic constitutional "checks and balances" contained in the Constitution.  As Chief

Justice Marshall wrote nearly two hundred years ago, "[t]he difference between the departments undoubtedly is, that the legislature makes, the executive executes, and the judiciary construes the law." Wayman v. Southard, 23 U.S. 1 (1825). See also Marbury v. Madison, 5 U.S. 137 (1803) (establishing authority of judicial branch, including authority to order executive to comply with law and to overrule acts of Congress).

15. By incorporating the Separation of Powers Doctrine into the basic checks and balances of the Constitution, the framers paid heed to the political philosopher Montesquieu's warning that "[w]hen the legislative and executive powers are united in the same person, or in the same body of magistrates, there can be no liberty. . . . [T]here is no liberty, if the judiciary power is not separated from the legislative and executive." Baron de Montesquieu, The Spirit of the Laws, bk. XI, ch. 6.

16. Defending the Constitution in the Federalist Papers, James Madison agreed with Montesquieu describing the Separation of Powers Doctrine as "essential to a free government." The Federalist No. 48 at 308, James Madison, New American Library ed., 1861.

17. In keeping with the framers' intent, the Supreme Court has stated:

> The doctrine of separation of powers is fundamental in our system. It arises, however, not from Art. III nor any other single provision of the

Constitution, but because "[b]ehind the words of the constitutional provisions are postulates which limit and control."

National Mut. Ins. Co. of the Dist. of Col. v. Tidewater Transfer Co., 337 U.S. 582, 590-91 (1949), *quoting* Principality of Monaco v. Mississippi, 292 U.S. 313, 322 (1934).

18.     In interpreting the Constitution's Separation of Powers Doctrine, the Supreme Court has held that Congress has authority to make prospective changes in the law, and that even if it does so in a manner intended to impact the outcome of pending litigation its exercise of its prospective law-making authority is not unconstitutional.  Robertson v. Seattle Audubon Soc., 503 U.S. 429 (1992).

19.     On the other hand, if Congress passes a law directing the judiciary to reach a particular outcome in a pending case under existing law -- yet does not amend the existing law -- Congress exceeds its Constitutional authority and treads on the judiciary's authority to construe existing law. U.S. v. Klein, 80 U.S. 128 (1871).

20.     Accordingly, the question of whether a law which influences the outcome of a pending case is unconstitutional in violation of the Separation of Powers Doctrine depends on whether Congress amends existing law, and thus behaves constitutionally under Robertson, or whether Congress directs the judiciary as to its construction of law and decision-

making in a pending case, and thus behaves unconstitutionally under <u>Klein</u>.

## FACTUAL ALLEGATIONS

### I.    The Court's Prior Ruling Construing Existing Law

21.    On August 5, 2010, this Court vacated and set aside the Federal Defendants' April 2, 2009 Final Rule to Identify the Northern Rocky Mountain Population of Gray Wolf as a District Population Segment, 74 Fed. Reg. 15,123. <u>Defenders of Wildlife, *et al.* v. Salazar, *et al.*</u>, 729 F.Supp.2d 1207, 1229 (D. Mont. 2010). The Court reached this conclusion by construing the Endangered Species Act (ESA) and determining that the challenged Final Rule violated the plain language of the statute by taking de-listing action at a level below that allowed by the ESA – i.e. treating different portions of a unified DPS differently. <u>Id.</u> at 1221-22 ("By listing and/or protecting something less than a DPS, the Service violated the plain terms of the ESA"); <u>see</u> <u>also</u> <u>id.</u> at 1228 ("The northern Rocky Mountains DPS must be listed, or delisted, as a district population and protected accordingly").

22.    The Federal Defendants and Defendant-Intervenors in <u>Defenders of Wildlife v. Salazar</u> appealed the Court's ruling. These appeals remain pending. Nos. 10-35885, 10-35886, 10-35894, 10-35897, 10-35898, and 10-35926 (9th Circuit).

## II.    The Budget Rider

23.    On April 15, 2011, the President signed into law H.R. 1473, the

Department of Defense and Full-Year Continuing Appropriations Act of

2011.  P.L. 112-10 § 1713, 125 Stat. 38 (April 15, 2011).  Section 1713 of

this Act states in its entirety:

> Before the end of the 60-day period beginning on the date of
> enactment of this Act, the Secretary of the Interior shall reissue the
> final rule published on April 2, 2009 (74 Fed. Reg. 15213 et seq.)
> without regard to any other provision of statute or regulation that
> applies to issuance of such rule.  Such reissuance (including this
> section) shall not be subject to judicial review and shall not abrogate
> or otherwise have any effect on the order and judgment issued by the
> United States District Court for the District of Wyoming in Case
> Numbers 09-CV-118J and 09-CV-138J on November 18, 2010.

Id.  On May 5, 2011, pursuant to the Congressional direction above, the

Secretary reissued the April 2, 2009 Final Rule that was previously vacated

and set aside by this Court as contrary to the plain language of the ESA.  76

Fed. Reg. 25590 (May 5, 2011).

24.    Section 1713 of H.R. 1473 is the only section of the

approximately 459-page budget bill discussing the wolf-delisting rule.

## III.    The Budget Rider Does Not Amend the ESA

25.    Because Section 1713 of H.R. 1473 was a "rider" embedded in

an approximately 459-page budget bill its legislative history is sparse.

26.    Section 1713 of H.R. 1473 apparently grew out of a bill

introduced by Senators Max Baucus and Jon Tester of Montana on February

10, 2011.  S. 321.  <u>See</u> Cong. Rec. Vol. 157, No. 21 (February 10, 2011) at

S642.  This bill, the "Delisting Gray Wolves to Restore State Management

Act of 2011," provided:

> Notwithstanding any other provision of law (including regulations),
> effective beginning on the date of enactment of this Act, the final rule,
> entitled 'Endangered and Threatened Wildlife and Plants; Final Rule
> To Identify the Northern Rocky Mountain Population of Gray Wolf as
> a Distinct Population Segment and To Revise the List of Endangered
> and Threatened Wildlife' (74 Fed. Reg. 15123 (April 2, 2009)), shall
> have the full force and effect of law.

<u>Id</u>.

27.    A provision similar to S. 321 also appears as Section 1713 in

H.R. 1, the House's initial budget bill for Fiscal Year 2011.

> Before the end of the 60-day period beginning on the date of
> enactment of this division, the Secretary of the Interior shall reissue
> the final rule published on April 2, 2009 (74 Fed. Reg. 15123 et seq.)
> without regard to any other provision of statute or regulation that
> applies to issuance of such a rule.  Such reissuance (including this
> section) shall not be subject to judicial review.

H.R. 1 at 266.  On February 16, 2011, Rep. Cynthia Lummis of Wyoming

attempted to amend Section 1713 of H.R. 1 to change the reference to the

April 2, 2009 delisting rule to the February 27, 2008 delisting rule, 73 Fed.

Reg. 10514, that included Wyoming.  Her amendment failed.  Cong. Rec.

Vol. 157, No. 25 (February 16, 2011), at H984.

28.     The next discussion of Section 1713 in the Congressional

Record took place on March 9, 2011 when Senator Cardin stated:

> And finally, the Senate bill is a dramatic improvement over H.R. 1 in
> terms of environmental policy. The other body approved legislative
> riders that would stop EPA from being able to protect the air
> Americans breathe every day and it would stop dead in its tracks the
> Chesapeake Bay restoration effort. The Senate bill, to its credit,
> eliminates these terrible policy directives. The Senate bill, however,
> does include a provision that would legislatively de-list the gray wolf
> from the endangered species list.  I continue to oppose legislative
> efforts to delist endangered species. We have a regulatory process that
> is based on scientific data, and we should use it. All that is needed is
> for the States in the Northern Rockies to submit appropriate
> management plans to the Department of Interior so that the law can
> work the way Congress intended.

Cong. Rec. Vol. 157, No. 35 (March 9, 2011), p. S1477.  H.R. 1 failed in the

Senate on March 9, 2011.  Id.

29.     H.R. 1473 was introduced on April 11, 2011.  Between April

11th and April 15th 2011, when H.R. 1473 became law, Section 1713 was

mentioned only three times in the Congressional Record.  On April 13, 2011

Senator Cardin criticized Section 1713:

> I will make it clear, Mr. President. I am very disappointed by many of
> the provisions included in this compromise. It is a true compromise. It
> is not what the Democrats would have written, I can assure you of
> that, and it is not what the Republicans would have written. It is a true
> compromise, and that is what we had to go through, I understand, but
> I feel compelled to at least let the people of Maryland know the cost
> of the compromises… There is a rider that was attached that did
> survive that deals with the delisting of the great wolf under the
> Endangered Species Act. That is not how we should be acting. There
> is a remedy for dealing with the delisting. There is a process we go

> through. We shouldn't go down a dangerous precedent that starts
> congressional or political action on delisting species that are included
> under the Endangered Species Act.

Cong. Rec. Vol. 157, No. 54, at S2421.  On April 14, 2011, Senator Cardin

again criticized Section 1713:

> I pointed out yesterday that on the environmental front regarding the
> Endangered Species Act, there is a provision that delists the great
> wolf. That shouldn't be targeted for congressional action. That is a
> dangerous precedent for us to set.

Cong. Rec. Vol. 157, No. 55, at S2473.  Finally, on April 14, 2011, the text

of Section 1713 of H.R. 1473 as passed appears in the Congressional

Record.  Cong. Rec. Vol. 157, No. 55, at H2720.

30.     Though sparse, this legislative history makes clear that at no

time in its consideration of Section 1713 of H.R. 1473, or its predecessors,

did Congress consider actually amending the ESA.  Rather, Congress was

merely trying to return the April 2, 2009 delisting rule to force without

amending the governing Statute.

31.     The statements of the proponents of Section 1713 outside of the

sparse Congressional debates makes it abundantly clear that Congress

designed Section 1713 to overturn this Court's decision in Defenders of

Wildlife v. Salazar, 729 F.Supp.2d 1207, and not to amend the ESA.

32.     On February 10, 2011, Senator Jon Tester of Montana posted

an entry on his Facebook page, announcing the filing of his bill, S. 321, with

Senator Max Baucus, stating: "[t]he Baucus-Tester bill would restore management practices as they were before the 2010 court ruling that resulted in the return of the gray wolf to federal management under the endangered species act."

33.    On February 15, 2011, Idaho Congressman Mike Simpson issued a press release stating he was "spearheading an effort to undo the August 2010 ruling by Judge Molloy that put wolves back on the endangered species list."

34.    On March 18, 2011 Representative Mike Simpson of Idaho issued a press release stating that he had included language in H.R. 1, legislation continuing operations for the federal government for the remainder of the fiscal year, "*to overturn Judge Molloy's decision* and return management of wolf populations in the region to states with approved management plans …." (emphasis added).

35.    On April 12, 2011 Representative Mike Simpson of Idaho issued a press release stating that his language in H.R. 1473 "*overturns the August 2010 decision by a district court* in Montana to put wolves in Idaho, Montana, Oregon, Washington, and Utah back on the endangered species list …." (emphasis added).

36.    Also on April 12, 2011, the Associated Press wrote an article on

the H.R. 1473, quoting Jon Tester, and stating: "[l]awmakers said they

inserted the rider to circumvent a federal judge who repeatedly blocked

proposals to hunt [wolves]."

37.   On April 13, 2011, the New York Times published an article on

Section 1713 of H.R. 1473 describing it as a proposal from Senator Jon

Tester of Montana and Representative Mike Simpson of Idaho and quoting

Senator Tester as saying "*[w]e didn't amend the Endangered Species Act*"

(emphasis added).

38.   On April 14, 2011, Senator Jon Tester issued a press release

stating that Congress had approved his plan to remove gray wolves in

Montana from the endangered species list.  Tester's press release also

thanked Representative Mike Simpson for his leadership on the issue in the

House of Representatives and stated: "[a]fter a judge's ruling against

Montana's wolf management plan last year, Tester has fought hard to put

wolves back under the management of the state."

39.   The Solicitor of the U.S. Department of the Interior is in

agreement with Plaintiffs that Section 1713 of H.R. 1473 did not amend the

Endangered Species Act.  On May 4, 2011, the Solicitor issued a

Memorandum, M-37024, withdrawing her predecessor's March 16, 2007,

Opinion, M-37013, on the Meaning of "In Danger of Extinction Throughout

All or a Significant Portion of its Range" previously rejected by this Court in

Defenders of Wildlife, *et al.* v. Salazar, *et al.*, 729 F.Supp.2d 1207, 1229 (D.

Mont. 2010).  The Solicitor's May 4, 2011 Memorandum, M-37024, states:

> As noted above Sec. 1713 of P.L. 112-10 directed reissuance of the 2009 Northern Rocky Mountain wolf rule.  Nothing in that section affects my authority to withdraw Opinion M-37013.  The statute is applicable only to the issuance of this single rule; it makes no reference to Opinion M-37013 nor does it amend the Endangered Species Act generally.

Memorandum M-37024 at n. 4.

## CLAIM FOR RELIEF

40.     Plaintiffs incorporate by reference all proceeding paragraphs of

this Complaint into their claim for relief.

41.     Section 1713 of H.R. 1473 does not amend the Endangered

Species Act.  Rather Section 1713 of H.R. 1473 merely directs the Federal

Defendants to reissue the Final Rule delisting wolves throughout all of the

northern Rocky Mountains DPS outside of Wyoming in order to reverse this

Court's ruling setting aside and vacating the Final Rule as contrary to the

plain language of the ESA.  Defenders of Wildlife, *et al.* v. Salazar, *et al.*,

729 F.Supp.2d 1207, 1229 (D. Mont. 2010).  In so doing, Congress

impermissibly trespassed on the judiciary's power to construe existing law

and thereby violated the Separation of Powers Doctrine contained in the

United States Constitution.  U.S. v. Klein, 80 U.S. 128 (1871).

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs respectfully request this Court:

A.     Declare Section 1713 of H.R. 1473, the Department of Defense and Full-Year Continuing Appropriations Act of 2011, P.L. 112-10 § 1713, 125 Stat. 38 (April 15, 2011), unconstitutional in violation of the Separation of Powers Doctrine contained in the Constitution.

B.     Declare the Federal Defendants' reissuance of the Final Rule delisting the northern Rocky Mountains gray wolf Distinct Population Segment outside of the State of Wyoming unconstitutional and void in violation of the Separation of Powers Doctrine contained in the Constitution.

C.     Order the Federal Defendants' to return the northern Rocky Mountains gray wolf Distinct Population Segment to the protection of the ESA until such DPS is delisted in accordance with law.

D.     Award Plaintiffs their reasonable attorneys' fees, costs, and expenses associated with this litigation consistent with the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable authority, and

E.     Grant Plaintiffs such further and additional relief as the Court may deem just and proper.

Respectfully submitted,

Dated: <u>May 5, 2011</u>

> <u>*/s/ Rebecca K. Smith*</u>
> Rebecca K. Smith
> P.O. Box 7584
> Missoula, Montana 59807
> Ph: (406) 531-8133
> Fax: (406) 830-3085
> Email: publicdefense@gmail.com
>
> James Jay Tutchton
> Tutchton Law Office, LLC
> 6439 E. Maplewood Ave.
> Centennial, CO 80111
> Ph: (720) 301-3843
> Email: jtutchtontlo@gmail.com
> (*Pending approval of pro hac vice motion*)
>
> Attorneys for Plaintiffs